173 So.2d 99

**W. E. OWENS LUMBER COMPANY, Inc.**

**v.**

**H. W. HOLMES et al.**

**7 Div. 647.**

Supreme Court of Alabama.

March 18, 1965.

Copeland & Copeland, Gadsden, for appellant.

Nabors & Torbert, Lusk, Swann & Burns and Dortch, Allen & Meighan, Gadsden, for appellees Prudential Ins. Co., Majors and Holmes, respectively.

PER CURIAM.

Appellant filed its bill of complaint in the Circuit Court of Etowah County, in Equity, to enforce a materialman's lien acquired pursuant to § 37, Title 33, Code 1940, on Lot 5, Block 6, in Wildwood Hills, within the City of Gadsden, and the improvements thereon. H. W. Holmes, who owned or acquired title to the lot and built a home or residence thereon, having purchased materials from appellant for the erection of the residence, was made party respondent along with Harry William Major and his wife, who purchased the property from Mr. Holmes. Also Prudential Insurance Company, which financed in part the purchase of Mr. Major and his wife, was made party respondent.

The trial court, after submission of the cause for final decree, rendered a judgment in favor of appellant against Mr. Holmes for the sum of $6,144.15, plus interest, for materials furnished him and used in the erection of the improvements on the lot, but held that the complainant was not entitled

to have its indebtedness adjudged a lien against the lot or the improvements thereon, and denied all other relief prayed for in the complaint. Complainant appeals from this decree.

Before resolving the appeal on its merits, we will first consider appellees' motion to dismiss the appeal on the ground that this court is without jurisdiction of this appeal for that the final decree here on appeal was rendered and filed on January 17, 1963; that a motion for rehearing was filed on February 8, 1963; a ruling denying said motion was rendered on September 12, 1963; and that this appeal was taken on March 6, 1964, which was more than six months after the final decree was rendered and filed.

Movants contend that in calculating the time elapsing before the appeal was taken on March 6, 1964, we should exclude only the days between the filing of the motion for a rehearing and its denial; that we should include the number of days between January 17, 1963, the date the final decree was rendered and filed, and February 8, 1963, the date the motion was filed, plus the number of days between September 12, 1963, when the motion was denied, and March 6, 1964, the date of the appeal from the final decree.—§ 788, Title 7, Code 1940. Such calculations would extend the time of appeal beyond the limitation fixed by § 788, Title 7, Code 1940. No appeal was taken from the order denying the motion for rehearing. Such an appeal is not permissible unless the order modifies the decree.— Equity Rule 62, Title 7, Code 1940. There was no order of modification.

It is our opinion that the motion here to dismiss this appeal should be overruled. The time limit for taking the appeal began to run from the date of the order (September 12, 1963) denying the motion. See Gavin v. Hughes, 249 Ala. 126, 30 So.2d 245, from which we quote:

"The motion to dismiss the appeal is not well taken. The appeal is from the decree of August 8, 1945, and not

from the decree overruling appellant's motion for a rehearing. The time in which an appeal must be taken, as provided for in section 216, title 61, Code of 1940, was suspended pending the ruling on the application for a rehearing. Equity Rule 62, Appendix title 7, Code of 1940, pages 1097, 1098. The statute and rule must be read in pari materia. See, also, Money v. Galloway, et al., 236 Ala. 55, 181 So. 252." (249 Ala. 127, 30 So.2d 246)

The appeal was duly perfected within the time prescribed by law; hence the motion for its dismissal is denied.

We will now consider the merits of the case. We will briefly review some of the salient evidence.

Respondent H. W. Holmes entered into a business relationship with Wildwood Development Company whereby he secured permission to build some residential houses on its subdivision. He contacted W. E. Owens, an officer and agent of appellant, with whom he had a conversation about buying building materials from complainant for use in erecting homes on the subdivision. Mr. Owens testified:

"Mr. Holmes told me at the time that he had an agreement with Wildwood Development Company to develop this particular area and asked me if we would be interested in furnishing materials. So, naturally, we would have been, and we were interested in furnishing materials and we agreed to do so. He agreed—he told me that he was going to build a number of houses in this area and wondered if I would furnish materials that we did."

There was no agreement as to the specific time the materials would be furnished, or as to the number of houses that Mr. Holmes was to build. Witness testified that he furnished everything that his company normally kept for building houses. There were several items used in the project that complainant did not furnish Mr. Holmes.

Appellant began delivering the materials to the suit property, Lot 5, Block 6, supra, upon which a lien is here sought to be enforced, in the Fall of 1959. Deliveries of materials to this project were regularly made during the progress of the building operations on this lot until February 12, 1960, at which time deliveries and construction ceased, there being no further need therefor.

The evidence is without dispute that Holmes entered into an agreement with one Caruso in February, 1960, to sell him the lot and improvements. Caruso went into possession and occupied the house for a few weeks, when he moved and never consummated the agreement to buy.

Mr. Holmes and respondent Major entered into a written agreement, dated April 27, 1960, whereby Holmes agreed to sell and Major agreed to buy the suit property at a consideration expressed in the agreement. Major testified that soon after the agreement was executed he moved a roll-away bed into the house and slept there several nights; that he moved his family into the house on the last day of May, 1960. On June 2, 1960, Holmes and his wife executed and delivered a deed to Major and his wife to the premises.

Prior to June 1, 1960, and after the written agreement to buy the home and possession delivered to Major, in fact from February 12, 1960, to June 1, 1960, no additions or repairs were made to the house which, according to the contention of appellees, was completed and sold to Major in a completed state.

On June 1, 1960, after Major moved his family into the house, appellant, at the instance of Holmes or his agent, delivered to the residence (the suit property) an aluminum screen, amounting to $5.10, to be attached to a louvered outside door. Mr. Major attached the screen. Appellant's witnesses testified that on June 11, 1960, appellant furnished Holmes some plywood, amounting to $66.83, for replacing some damaged material on a cornice that had become warped. There was no dispute that the screen was delivered, but there was dispute as to whether new plywood was delivered, or the old plywood was again used after corrections made.

Thereafter, on November 30, 1960, complainant executed a verified statement in writing, claiming a lien upon the suit property for the amount of materials furnished for the suit property. It is averred in the complaint:

" * * * that within six (6) months after the last item of building materials and supplies had been furnished for the construction of a building or improvement of a building on the above described property, it filed a verified statement in writing in the office of the Judge of Probate of Etowah County, Alabama, showing the amount of the demands secured by the lien, * * *."

Also the complaint averred that complainant was entitled to interest from June 11, 1960, which was the last date any building materials or supplies were furnished on said job. Complainant contends that June 11, 1960, the date the plywood is alleged to have been furnished, is the time from which he had six months to file his claim in the probate office.

We think it is clear from the record that respondent Major went into possession of the premises under the contract of purchase soon after April 27, 1960, and remained in possession awaiting the arrival of his family, who came and began occupying the house on the last day of May, 1960. When Mr. Major purchased the property and began his occupancy, he did so subject to the lawful right of complainant to preserve its materialman's lien by filing its claim within the time and in the manner provided by law in Title 33, § 42, Code 1940. The last item of materials which complainant furnished for this project prior to its sale to Mr. Major was Feb-

ruary 12, 1960. We think this was the date the statute of limitations for filing the claim began to operate, and not June 1 or June 11, 1960.

The items sold to Mr. Holmes on the two latter days were distinct and separate sales from those made on and prior to February 12, 1960, for this project due to the fact that the property at that time had been sold and delivered to Mr. Major as a completed project for immediate occupancy. There is no evidence that Major was under any obligation to complainant to pay for the materials delivered on the two June dates. Complainant is without lawful right to treat these two sales as a continuity of prior sales of the materials, during which time Holmes was the lawful owner of the building and lot and in his possession. These two sales, incidental as they were, cannot serve to fix a new date from which the time prescribed by § 42, Title 33, supra, began to run. Such incidental sales, while the home was not under construction and after its sale and delivery of possession, cannot serve to extend the time for filing the claim as provided by law to preserve the lien.

But appellant contends that the transaction between it and Mr. Holmes falls within the purview of Shepherd Plumbing and Heating Co. et al. v. Bedford et al., 273 Ala. 87, 135 So.2d 160(2), wherein we held that the work of appellants was done under one contract with the owner. Shepherd agreed to make plumbing installations in the six residences, all under one contract, while Herbertson, the other complainant, agreed to do the tile work and flooring, all under one contract, for the same residences, each of which occupied a lot. We said:

"It is further insisted that each of the complainants is not entitled to a lien because each did not file a lien claim within six months as required by Section 42, Title 33, Code of 1940. In the case of Shepherd Plumbing and Heating Company the work was commenced

by them on or about April 29, 1959 and was completed on March 4, 1960. The lien claim was filed on May 11, 1960. It is true that there was a hiatus between the completion of three of the houses and the three remaining houses but we do not think that this affects the situation since all of the work was done under one contract though performed on six separate lots. The account between the Shepherd Plumbing and Heating Company and Joe Bedford was an open and running account and the lien claim was filed within six months after the completion of the contract.

"Hugh Herbertson began his work on May 20, 1959 and completed his work on October 29, 1959. He filed his lien claim on April 29, 1960, which is within the six months period required by the statute. Section 2, Title 1, Code of 1940; Odom v. Odom [272 Ala. 164] 130 So.2d 10. We conclude that Hugh Herbertson is entitled to a lien on the property on each of the six lots for the materials furnished and labor done on each of these six lots.

"Since the court denied each of the appellants the right to a lien on the six lots we are reversing the decree of the lower court and remanding the cause to the lower court so that the court can render a decree in accordance with this opinion." (273 Ala. 90–91, 135 So.2d 162)

The facts in the aforementioned case are different from those in the case at bar. Here the units contemplated by Mr. Holmes and complainant in their discussion were not under construction at one time. In fact, the number of houses to be built and the start of their construction was neither definite nor determined. It was a general idea or plan of Mr. Holmes to construct some dwellings in the subdivision. The

**562**

suit property was first begun, and some others were thereafter begun. There was no discussion at that time between complainant's agent and Mr. Holmes as to the type or character of the buildings to be erected. We are impressed that complainant was granting credit rather than making a binding contract to furnish all the materials. In fact, it did not furnish several items included in the building.

To apply here the principle of law enunciated in the Shepherd case relative to the time for filing claim for a lien would tend to disrupt or impede financing the sale of homes in a subdivision. It would tend to confuse rather than promote such credit sales. The purchaser could not be reasonably sure his home under purchase was free from a statutory lien for materials until all the housing units in the area under development had been completed and the time elapsed for filing a claim for a lien had expired. It would be difficult to ascertain the status of the building arrangements for future construction in the area under development. We think further extension of the principle in the Shepherd case pertaining to the time for filing a claim would be inadvisable. We might use the colloquial expression that "each tub should stand on its own bottom" except as the facts fall squarely within the Shepherd case.

It is our opinion that the decree of the trial court is free from error and should be affirmed. It is so ordered.

The foregoing opinion was prepared by Bowen W. Simmons, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.